**Exhibit B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LB&B ASSOCIATES INC. and OLGOONIK LOGISTICS, LLC, a joint venture d/b/a NORTH FORK SERVICES JOINT VENTURE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. ~~________~~08-320C |
| | ) | (Judge Braden) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

Pursuant to RCFC 15(a) and with written consent of the adverse party and leave of the Court, Plaintiff LB&B Associates Inc. and Olgoonik Logistics, LLC, a joint venture d/b/a North Fork Services Joint Venture ("NFS") hereby amends its Complaint and, complaining of the Defendant, the United States of America, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. LB&B Associates Inc. ("LB&B") is a North Carolina corporation with its principal office and place of business in Columbia, Maryland.

2. Olgoonik Logistics, LLC ("Olgoonik") is an Alaska limited liability company with its principal office and place of business in Anchorage, Alaska.

3. In 2002, LB&B and Olgoonik formed a joint venture for the purpose of proposing on, negotiating, and performing an operations, maintenance and support services contract in support of the United States Department of Agriculture (the "USDA") at the Plum Island Animal Disease Center ("PIADC") off the Eastern coast of Long Island, New York (the "Contract"). The joint venture formed by LB&B and Olgoonik did business as North Fork Services Joint Venture.

**Exhibit B**

4. Defendant is the United States of America (the "United States"), acting through the USDA and the Department of Homeland Security ("DHS"). The United States is a sovereign government that is ultimately responsible for the actions complained of herein.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491 and 41 U.S.C. §§ 601-13.

## FACTS

6. On or about November 4, 2002, the USDA awarded to NFS the Contract, under Contract No. 53-3K06-3-0200.

7. The Contract was a Cost Plus Award Fee contract.

8. The Contract, as originally awarded to NFS, was for a base period from January 6, 2003 through September 30, 2003, with four one-year option periods. The Contract also contemplated a 60-day phase-in period, from November 4, 2002 through January 5, 2003.

9. On June 1, 2003, PIADC was transferred to DHS. USDA continued to act as the contracting agent for the Contract.

10. On July 31, 2003, USDA and DHS notified NFS that it would not be exercising any of the options periods in NFS's contract. USDA and DHS indicated that, "[t]his decision is not a reflection of your performance, but is in response to the Department of Homeland Security's (DHS) determination that the requirements of the facilities management contract need to be dramatically increased in scope from that which currently exists." USDA and DHS further advised NFS that they were exercising their right to unilaterally extent the period of Contract performance through December 31, 2003 "to allow for continuation of services and transition activities."

**Exhibit B**

11. By modification to the Contract effective September 29, 2003, USDA and DHS extended the base period of the Contract through December 31, 2003.

12. NFS fully performed its obligations under the Contract in accordance with the Contract and its requirements.

13. Throughout the course of the Contract, NFS submitted invoices in accordance with Section G.4 of the Contract.

14. USDA and/or DHS initially paid NFS's invoices. However, not long after deciding not to exercise the options under the Contract, USDA and/or DHS ceased paying and/or underpaid a number of NFS's properly-submitted invoices for allowable costs.

15. Specifically, USDA and/or DHS underpaid or failed to pay NFS with respect to the following invoices (the "Invoices"):

**Fiscal Year 2003**

| **Invoice #** | **Invoice Amount** | **Paid** | **Balance Due** |
|---|---|---|---|
| 000021 | $378,366.00 | 145,793.50 | 232,572.50 |
| 000025 | 72,373.00 | 0 | 72,373.00 |

**Fiscal Year 2004**

| **Invoice #** | **Invoice Amount** | **Paid** | **Balance Due** |
|---|---|---|---|
| 000008 | 136,956.00 | 0 | 136,956.00 |
| 000009 | 25,046.00 | 0 | 25,046.00 |
| 000010 | 32,559.00 | 0 | 32,559.00 |
| 000011 | 53,966.00 | 0 | 53,966.00 |
| 000012 | 15,197.00 | 0 | 15,197.00 |
| 000015 | 1,555.00 | 0 | 1,555.00 |
| 000020 | 32,161.00 | 0 | 32,161.00 |
| 000023 | 32,115.00 | 0 | 32,115.00 |
| 000024 | 3,708.00 | 0 | 3,708.00 |

**Exhibit B**

16. The total amount outstanding due to NFS as a result of USDA's and/or DHS's underpayment and/or refusal to pay NFS's Invoices is $637,864.50.[1]

17. DHS and/or USDA is obligated to pay NFS the costs claimed under the Invoices pursuant to, *inter alia*, Federal Acquisition Regulation ("FAR") 52.216-7, *Allowable Cost and Payment*, which provides: "The Government will make payments to the Contractor when requested as work progresses . . . in amounts determined to be allowable by the Contracting Officer in accordance with Federal Acquisition Regulation (FAR) subpart 31.2."

18. Each of the costs claimed under the Invoices are allowable under subpart 31.2 of the FAR.

19. ~~Neither~~Other than arguably in one letter dated March 9, 2005 (the "March 2005 Letter"), well after Contract performance had ended, neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices were not allowable under subpart 31.2 of the FAR.

20. Each of the costs claimed under the Invoices are reasonable.

21. Neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices were not reasonable.

22. Each of the costs claimed under the Invoices are allocable to the Contract.

23. Neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices were not allocable to the Contract.

[1] The difference between the sum of the amounts listed in Paragraph ~~**~~15 and the total outstanding is the result of two small overpayments by USDA and/or DHS which NFS credited against the total amount outstanding.

**Exhibit B**

24. Each of the costs claimed under the Invoices comply with the standards promulgated by the CAS Board, if applicable, otherwise, generally accepted accounting principles and practices appropriate to the circumstances.

25. Neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices did not comply with the standards promulgated by the CAS Board, if applicable, otherwise, generally accepted accounting principles and practices appropriate to the circumstances.

26. Each of the costs claimed under the Invoices comply with the terms of the Contract.

27. ~~Neither~~Other than arguably in the March 2005 Letter, well after Contract performance had ended, neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices did not comply with the terms of the Contract.

28. Each of the costs claimed under the Invoices comply with any limitations set forth in Subpart 31.2 of the FAR.

29. Neither DHS nor USDA ever indicated to NFS that DHS and/or USDA believed or contended that the costs claimed under the Invoices did not comply with any limitations set forth in Subpart 31.2 of the FAR.

30. On June 29, 2007, NFS submitted to Salvatore Chillemi at DHS, the then-Contracting Officer for the Contract, a certified claim (the "Claim") and demanded payment, as a matter of right, in the sum certain of $637,864.50 plus interest in the amount of $25,029.35 in accordance with the Prompt Payment Act, 31 U.S.C. § 3901, *et seq.*, and FAR § 52.232-25, for a total of $662,893.35.

**Exhibit B**

31. Neither USDA nor DHS responded to NFS's Claim.

32. On December 11, 2007, NFS submitted to Mr. Chillemi at DHS a follow-up letter regarding NFS's Claim (the "December 11, 2007 Letter"). NFS requested that Mr. Chillemi issue a final decision on or before January 15, 2008, or NFS would treat the failure to issue a final decision as a deemed denial of NFS's claim.

33. On or about December 28, 2007, counsel for NFS received a letter from Nilza Velazquez, Esq. from the DHS Office of General Counsel (the "DHS Letter"). Ms. Velazquez advised:

> We regret not responding to your claim letter of June 29, 2007 at an earlier date. The contract administration for Contract No. 53-3K06-3-0200 has been reassigned to a senior Contracting Officer for evaluation and response, and the undersigned will be the responsible legal advisor.

The DHS Letter then provided contact information for the new Contracting Officer, Jamala Jones, and then stated:

> Also, your letter of December 11, 2007 requests a Contracting Officer final decision on later than January 15, 2008. While we will endeavor to respond as soon as possible, it is unlikely that a final decision can be issued by that date.
>
> We will advise you as soon as we can determine an approximate date for the Contracting Officer's final decision.

34. NFS received no further correspondence from DHS or USDA. Specifically, neither DHS or USDA ever advised NFS of an approximate date for the Contracting Officer's final decision, and neither DHS or USDA ever provided a Contracting Officer's final decision to NFS in response to NFS's Claim.

35. On February 19, 2008, NFS sent Ms. Jones, the Contracting Officer, a letter, with a copy to Ms. Velazquez (the "February 19 Letter"). In the February 19 Letter, NFS noted that it had been nearly eight months since the filing of NFS's Claim, and over two months since it had

**Exhibit B**

received the DHS Letter, yet NFS had never received any substantive response to its certified Claim.

36. In the February 19 Letter, NFS requested that Ms. Jones issue a final decision no later than March 14, 2008. NFS advised that, if it did not receive a final decision by that date, it would treat the Contracting Officer's failure to issue a final decision as a deemed denial of NFS's Claim.

37. To date, NFS has received no response to its February 19 Letter, has received no Contracting Officer's final decision and, indeed, has received absolutely no communications in its response to its Claim other than the DHS Letter on December 28, 2007.

38. DHS's and/or USDA's failure to issue a Contracting Officer's final decision in response to the Claim within a reasonable time constitutes a deemed denial of the Claim.

39. The Claim was and this action is filed within all applicable statutes of limitation and repose, and all conditions precedent have been performed or have occurred.

**COUNT I: PAYMENTS CLAUSE**

40. The allegations of Paragraphs 1 through 39 of this Complaint are hereby realleged and incorporated herein by reference as if fully set forth.

41. The amounts sought by NFS in the Invoices are allowable costs under the Contract as defined in Part 31 of the FAR.

42. To date, USDA and DHS have failed and refused to remit to NFS the amounts sought in the Invoices, in violation of, *inter alia*, FAR 52.216-7, *Allowable Cost and Payment*.

43. Wherefore, NFS is entitled to recover the amounts sought in the Invoices from USDA and/or DHS; specifically, NFS is entitled to compensation under, *inter alia*, FAR 52.216-

**Exhibit B**

7 in the amount of $637,864.50, or such greater or lesser amount to be established at trial, plus interest, and NFS demands judgment against the United States in such amount.

**COUNT II: PROMPT PAYMENT ACT**

44. The allegations of Paragraphs 1 through 43 of this Complaint are hereby realleged and incorporated herein by reference as if fully set forth.

45. NFS submitted all of the Invoices in accordance with Section G.4 of the Contract and any other applicable Contract provisions.

46. Neither DHS nor USDA has ever claimed that NFS did not submit proper invoices in accordance with the Contract requirements.

47. Wherefore, NFS is entitled to recover interest on the amounts claimed in the Invoices pursuant to the Prompt Payment Act, 31 U.S.C. § 3901, *et seq.* and FAR 52.232-25, *Prompt Payment*; specifically, NFS is entitled to recover interest in the amount of $25,029.35, or such greater or lesser amount to be established at trial, plus interest, and NFS demands judgment against the United States in such amount.

**PRAYER FOR RELIEF**

WHEREFORE, NFS prays that this Court grant the following relief:

1. That the Court order the United States to pay to NFS the sum of $637,864.50, or such greater or lesser amount to be established at trial; and

2. That the Court order the United States to pay to NFS the sum of $25,029.35, or such greater or lesser amount to be established at trial, as interest due under the Prompt Payment Act; and

3. That the Court order the United States to pay to NFS interest on all amounts found to be due and owing to NFS, pursuant to, *inter alia*, 41 U.S.C. § 611; and

**Exhibit B**

4. That the Court grant NFS its attorneys' fees to the extent allowed by law; and

5. The Court grant such other and further relief as the Court deems just and proper.

This the ~~29th~~___ day of ~~April~~September, 2008.

WYRICK ROBBINS YATES & PONTON LLP

______________________________
Benjamin N. Thompson
Post Office Drawer 17803
Raleigh, North Carolina 27619
Telephone: (919) 781-4000
Facsimile: (919) 781-4865
bthompson@wyrick.com

COUNSEL OF RECORD FOR LB&B ASSOCIATES INC. AND OLGOONIK LOGISTICS, LLC, a joint venture d/b/a NORTH FORK SERVICES JOINT VENTURE

OF COUNSEL:

Jennifer M. Miller
Wyrick Robbins Yates & Ponton LLP
Post Office Drawer 17803
Raleigh, North Carolina 27619
Telephone: (919) 781-4000
Facsimile: (919) 781-4865
jmiller@wyrick.com

Document comparison done by DeltaView on Tuesday, September 09, 2008 1:47:30 PM

| **Input:** | |
|---|---|
| Document 1 | PowerDocs://DOCS/531551/1 |
| Document 2 | PowerDocs://DOCS/549999/1 |
| Rendering set | Standard |

| **Legend:** | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 18 |
| Deletions | 7 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 25 |